# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| In the Matter of the Detention of: | No. 57032-7-II |
|---|---|
| G.O., | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – GO appeals the trial court's order involuntarily committing him for 90 days based on a determination that he was gravely disabled under former RCW 71.05.020(24) (2021).

We hold that the trial court's factual findings support the court's conclusion that GO was gravely disabled. Accordingly, we affirm the trial court's involuntary commitment order.

FACTS

*Background*

GO was charged with residential burglary and violation of a protection order when he refused to leave his former wife's house. The trial court dismissed the charges, but the court committed GO to Western State Hospital (WSH) for up to 72 hours for evaluation.

Once GO was admitted to WSH, he was evaluated by Dr. Samantha Litt and Dr. Sukhinderpal Aulakh. Dr. Litt and Dr. Aulakh subsequently filed a petition to involuntarily commit GO for up to 180 days. The petition described GO as unkempt, irritable, and paranoid with loose thought. GO was observed speaking and gesturing to unseen objects. Medication

was prescribed for his paranoia, but GO refused to take it. Litt attempted to evaluate GO's mental status, but he refused to cooperate.

The petition stated that GO demonstrated impaired volitional control because he continuously was verbally aggressive and hostile with staff and lacked cognitive control because he believed that he was being illegally detained. The petition concluded that it was unlikely that GO would take prescribed medication or seek out treatment resources if discharged.

*Commitment Hearing*

On October 7, 2021, a hearing was held on the 180-day involuntary commitment petition. GO refused to participate in the hearing because he thought that the court was a not a real court.

Litt testified that when she met GO in June, he did not want to participate in an evaluation so their interaction was brief. But she was able to observe him and she met with GO the day before the hearing to determine if his mental status had changed.

Litt's diagnosis was that GO suffered from unspecified schizophrenia. Litt reached this conclusion because she observed GO responding to auditory hallucinations, he had delusional beliefs about the government conspiring against him to keep him at the hospital, and he had disorganized thinking.

Litt also testified that GO's volitional control was impaired. During their interactions, GO would become easily agitated and yell, making it difficult to have a two-sided conversation. Litt testified that GO was adamant that he did not have a mental illness, and he did not take any of his medication. In addition, Litt stated that in the past, GO had brandished a knife at a designated crisis responder (DCR). Litt testified that the mental illness was causing GO's cognitive and volitional impairment.

Litt testified that if GO were released he might be able to take care of basic needs like food, but she was unsure where he would go for housing. And Litt was concerned with GO's ability to advocate for himself and interact with members of the community. GO believed that he had a right to be at the house where the incident occurred that caused him to be arrested. Litt stated that if GO were released there was a substantial likelihood that he would engage in similar acts like residential burglary again. Litt testified that there were no less restrictive alternatives because even in a very structured setting, GO would not engage in treatment or take medication.

The trial court issued findings of fact and conclusions of law. The trial court's findings of fact summarized Litt's testimony. The court found that GO suffered from unspecified schizophrenia spectrum and other psychotic disorder. GO was responding to internal stimuli and had the delusional belief that the government was conspiring against him and trying to frame him. His thought process was incoherent and his volitional control was impaired. He was easily agitated and loudly yelled at Litt and staff. The court found that "[h]is conspiracy beliefs have overcome his cognitive control and affect his volitional control." Clerk's Papers (CP) at 29. In addition, the court found that GO brandished a knife at a DCR due to his behavioral health disorder.

The trial court also found that GO did not acknowledge his diagnosis and refused to take medication at WSH. If released, he would struggle to meet his needs because of his behavioral health disorder. And without a structured setting, he likely would come into contact with law enforcement again. The court found that GO "is unable to rationally discuss his circumstances and formulate a plan to address his behavioral health disorder." CP at 29.

The trial court found that GO is and continues to be gravely disabled "as a result of a behavioral health disorder manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over actions, is not receiving such care as is essential for health and safety." CP at 29. The court also found that there were no less restrictive alternative treatments.

The trial court entered a conclusion of law that GO was gravely disabled. The court ordered up to 90 days of inpatient treatment for GO.

GO appeals the trial court's 90-day involuntary commitment order.

ANALYSIS

GO argues that the trial court's factual findings do not support the court's conclusion that he was gravely disabled. We disagree.

When reviewing a trial court's decision on involuntary commitment, we consider whether substantial evidence supports the court's findings of fact and whether those findings of fact support the court's conclusions of law and judgment. *In re Det. of A.F.*, 20 Wn. App. 2d 115, 125, 498 P.3d 1006 (2021), *review denied*, 199 Wn.2d 1009 (2022). We "view the evidence in the light most favorable to the petitioner," and we do not disturb decisions "regarding witness credibility or the persuasiveness of the evidence." *Id.*

A person is gravely disabled if because of a mental disorder the person

> (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

Former RCW 71.05.020(24).

4

The court found that GO was gravely disabled under subsection (b). When a petitioner seeks to prove that a person is gravely disabled under former RCW 71.05.020(24)(b), they must show (1) "recent proof of significant loss of cognitive or volitional control" and (2) "a factual basis for concluding that the individual is not receiving or would not receive, if released, such care as is essential for [their] health or safety." *In re Det. of LaBelle*, 107 Wn.2d 196, 208, 728 P.2d 138 (1986). The second requirement may include a showing that "the individual is *unable*, because of severe deterioration of mental functioning, to make a rational decision with respect to [their] need for treatment." *Id.*

Here, the court found that GO believed that the government was conspiring to keep him at the hospital and frame him. He was responding to internal stimuli, his thought process was incoherent, and his volitional control was impaired. He was easily agitated and loudly yelled at Litt and WSH staff. And GO had brandished a knife at a DCR as a result of his behavioral health disorder. These findings are sufficient to support the conclusion that GO had a significant loss of cognitive or volitional control.

The trial court's findings regarding GO not receiving essential care if released were less detailed. However, the court found that GO believed that he did not have a behavioral health disorder and refused to take medications at WSH. The court was concerned where GO would go in the community, and found that he likely would encounter law enforcement again. The court found that GO would have trouble communicating his mental health needs and interacting with others. Finally, the court found that GO was unable to formulate a plan to address his behavioral health disorder. These findings are sufficient to support the conclusion that GO would not receive care that was essential for his health or safety if released.

No. 57032-7-II

We conclude that the trial court did not err in concluding that GO was gravely disabled under former RCW 71.05.020(24)(b).

CONCLUSION

We affirm the trial court's 90-day involuntary commitment order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

CRUSER, C.J.

VELJACIC, J.

6